CAUSE NO. _____ 22-7474-211

| | | |
|---|---|---|
| **STACEY LIVINGSTON,** | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | _____ JUDICIAL DISTRICT |
| **HIDDEN COVE HOMEOWNERS'** | § | |
| **ASSOCIATION, INC., and** | § | |
| **DENTON COUNTY, TEXAS,** | § | |
| | § | |
| *Defendants*. | § | DENTON COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, Stacey Livingston, complaining of Defendants, Hidden Cove Homeowners' Association and Denton County, Texas, and files this, her Original Petition, and would respectfully show the Court the following:

### I. DISCOVERY CONTROL PLAN

1. Plaintiff intends to conduct discovery under Level 2, pursuant to Texas Rules of Civil Procedure 190.1.

### II. PARTIES

2. Plaintiff, Stacey Livingston ("Livingston" or "Plaintiff"), is an adult woman and resident of Denton County, Texas.

3. Defendant, Hidden Cove Homeowners' Association, Inc. ("HOA" or "Defendant HOA") is an active Texas corporation that may be served by and through its registered agent for service of process, Spectrum Association Management of Texas, LLC at 17319 San Pedro, Suite 318, San Antonio, TX 78232.

PLAINTIFF'S ORIGINAL PETITION　　　　　　　　　　　　　　　　　　　　　　　　　　Page 1

4.  Defendant, Denton County, Texas ("the County") is a governmental entity duly organized and existing under the laws of the State of Texas. The County is responsible for oversight of the Denton County Sheriff's Department ("DCSD"). The County may be served by and through the Denton County Judge Andy Eads at 1 Courthouse Drive, Suite 3100, Denton, TX 76208.

### III.  VENUE AND JURISDICTION

5.  Venue is proper in Denton County, Texas pursuant to Texas Civil Practice and Remedies Code Sec. 15.002(a)(1) because the events or omissions giving rise to this action occurred in Denton County, Texas.

6.  This Court has jurisdiction over this action because the amount in controversy is within the jurisdictional limits of this Court.

7.  Plaintiff seeks monetary relief over $200,000 but not more than $1,000,000 and a demand for judgment for all other relief to which the parties deem themselves entitled.

### IV.  FACTUAL BACKGROUND

8.  Plaintiff is a responsible homeowner who has lived within Defendant HOA's neighborhood for approximately 14 years.

9.  Defendant Ardis has also been a resident within the HOA community for a number of years and has exhibited problematic and dangerous behavior throughout his time residency within the HOA.

10. Defendant HOA was on notice of Ardis's propensity for violence and for his dangerous and racist attitude towards African Americans within the community.

11. In fact, neighbors had previously reported Ardis's troublesome behavior to Defendant HOA as concerns for community safety began to take place. Defendant HOA

ignored these concerns and sought to brush them off. This was Defendant HOA's attitude concerning Ardis, despite numerous occasions where Ardis threatened Plaintiff and the community.

12. On at least one prior occasion, Ardis initiated a dangerous episode of harassment against an African American neighbor until the neighbor was forced to relocate away from Defendant HOA's neighborhood.

13. On or about January 13, 2021, Plaintiff was inside of her home when she heard a loud strike at her front door. Startled at the sudden and violent knock at her door, Plaintiff went to her front door, opened the door, and encountered Ardis at her doorstep.

14. Plaintiff, who at this point had only ever had minimal contact with Ardis, asked Ardis what he was doing at her house.

15. Ardis, clearly in distress, responded to Plaintiff with "I'll fuck your daughter for a dollar" and continued to articulate unintelligible words until Plaintiff confronted him and asked him to leave her property.

16. When told to leave Plaintiff's property, Ardis responded "shut your nigger mouth."

17. Plaintiff again told Ardis to leave her property and was startled when Ardis lunged at her through her front door. Plaintiff immediately shut and locked the door before retrieving her firearm for her own safety.

18. Plaintiff again informed Ardis that he needed to leave her property and never return. Ardis left her property while screaming more racial slurs as he walked back towards his own home.

19. Plaintiff called 911 to inform them of what had transpired. Deputies with the Denton County Sheriff's Office responded and although Plaintiff informed them that she felt in danger because of Ardis's statements and actions, the deputies did nothing.

20. Approximately two days later, Plaintiff noticed that her internet was unavailable. Plaintiff investigated the issue and realized that her property had been vandalized. Plaintiff's internet box had been cut and torn with a knife.

21. Plaintiff contacted the sheriff's office once again. A new deputy was dispatched and told Plaintiff that she would need to obtain video footage of the incident. The deputy wanted "proof" before filing a criminal trespassing complaint against Ardis.

22. Later that same day and after returning to her home, Plaintiff again her a loud strike at her door.

23. Plaintiff opened her front door and saw spray paint all over her driveway with the words "nigger," "crack hoe," and "scary nigger" painted across the entire driveway.

24. Once again, Plaintiff called law enforcement. As Plaintiff waited for deputies to arrive, she witnessed Ardis giving her the middle finger from his home. When deputies finally arrived, they witnessed Ardis again try to approach Plaintiff before they decided to call for backup.

25. Shortly after, deputies approached Ardis at his home to give him a criminal trespass citation.

26. Due to the dangerous situation she was being subjected to, as well as the racial slurs hurled by Ardis, the harassing remarks, and the criminal trespassing on her property, Plaintiff decided to book a hotel for the weekend for her safety.

27. Law enforcement had failed to keep her safe and there was a reasonable likelihood, based on Ardis's past behavior, that Plaintiff would again be put into harm's way.

28. Plaintiff received a call that weekend from her neighbors informing her that Ardis was throwing things outside of his home and singing "I am going to kill a nigger."

29. Neighbors contacted law enforcement to report Ardis's dangerous behavior. When deputies arrived and attempted to contact Ardis, they were unable to get him to open his door. The deputies then left.

30. After the deputies left, Ardis approached his neighbors screaming insults such as "You are helping niggers!"

31. Plaintiff was also sent video footage by neighbors that showed Ardis walking to Plaintiff's house screaming "She is my nigger bitch and I have to feed my nigger." Ardis could also be seen throwing food onto Plaintiff's driveway to intimidate her even further.

32. Plaintiff again contacted law enforcement to plea for help.

33. Deputies arrived on scene and informed Plaintiff that Ardis had not criminally trespassed and that there was nothing they could do to address Ardis's propensity for violent behavior.

34. One deputy stated to Plaintiff, "Just because you are black, and I am white, does not mean anything… I do not think racism has anything to do with Michael's behavior… this is mental illness."

35. Defendant HOA was aware of Ardis's dangerous propensities. In fact, Ardis had previous racially motivated encounters with black residents within Defendant HOA's jurisdiction. Despite this knowledge, Defendant HOA continued to allow Ardis to live within its jurisdiction without consequence or rebuke.

36. Defendant County was also aware of the danger posed by Ardis to Plaintiff but failed to take any reasonable measures to ensure Plaintiff's safety. Defendant County's lack of response contributed to Ardis's ability to continue to harass and intimidate Plaintiff.

37. It was not until weeks later that Ardis was arrested on unrelated weapons charges that the danger to Plaintiff and the community were removed. Although local authorities failed to take proactive measures to protect Plaintiff and the community, the Federal Bureau of Investigation launched an investigation into these incidents as a hate crime.

38. Ardis is currently serving a prison sentence for aggravated assault with a deadly weapon and cyberstalking.

## V. CAUSES OF ACTION

### *Count I — Negligence*
### *Plaintiff against Defendant HOA*

39. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

40. Defendant HOA owed Plaintiff and the community a legal duty to protect her from the harm and injuries she suffered, which ultimately resulted in causing Plaintiff great mental anguish and emotional distress.

41. Defendant HOA had a duty to provide for the safety and well-being of Plaintiff and the community in its neighborhood.

42. Defendant HOA had a duty to resolve the ongoing issues of harassment, trespass, and violence by Ardis that it was on notice of.

43. Plaintiff and neighbors within the HOA community reported Ardis to Defendant HOA on several occasions. However, Defendant HOA never investigated or attempted to aid Plaintiff in resolving the ongoing issues with Ardis.

44. Plaintiff has suffered damage in that she continued to fear for her safety while Ardis resided in her neighborhood and when Defendant HOA failed to provide for a safe environment within the community. Plaintiff has suffered from extreme mental anguish and emotional distress as a proximate result of Defendant's negligence.

### Count II – Breach of Restrictive Covenants and Bylaws
### Plaintiff against Defendant HOA

45. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

46. The conduct alleged above amounts to breach of the restrictive covenants and bylaws binding the HOA and property owners, including Plaintiff.

47. HOA owed Plaintiff a duty to protect her from the harm and injuries she suffered, and the nuisance and harassment she endured by her neighbor, Michael Ardis.

48. HOA breached this duty, and by and through its failure to address the nuisance and harassment from Michael Ardis, Plaintiff has suffered damages.

### Count III – Claims Pursuant to the Fourteenth Amendment
### Plaintiff against Defendant Denton County

49. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

50. The facts outlined above demonstrate violations of Plaintiff's civil rights pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

51. The acts and/or omissions of employees and agents of Denton County evidence a failure of the County to provide adequate training and supervision to employees and staff, thus violating the rights of Plaintiff pursuant to the Due Process Clause of the Fourteenth Amendment for which the County is liable.

52. Denton County discriminated against Plaintiff by ignoring her pleas for help and ignoring the obvious racist context of the multiple incidents of assault and harassment she was a victim of.

53. Denton County discriminated against Plaintiff as a class-of-one in failing to keep her safe and against violating her rights under the Equal Protection Clause of the Fourteenth Amendment.

54. As a result, the County violated the Equal Protection Clause of the Fourteenth Amendment for which the County is likewise liable under 42 U.S.C. § 1983.

## VI. DAMAGES

55. As a direct and proximate result of the acts outlined above, Plaintiff has been damaged. Defendants' conduct has caused severe injury to the Plaintiff. Furthermore, she has suffered economic loss, emotional and mental anguish, and pain and suffering due to the negligent acts of the Defendants.

56. Plaintiff seeks compensatory damages to compensate her for her damages, which include injuries, mental anguish, and pain and suffering, both past and future.

57. Plaintiff has retained the services of the undersigned attorney and claims entitlement to an award of reasonable and necessary attorney's fees.

## VII. REQUEST FOR DISCLOSURES

58. Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendants are requested to disclose, within fifty (50) days of service of this Petition, the information or material as described in Rule 194.2.

## VIII. TRIAL BY JURY

59. Plaintiff respectfully requests trial by jury.

## IX. PRESERVING EVIDENCE

60. Plaintiff requests and demand that the Defendants preserve and maintain all evidence pertaining to any claim or defense related to the incident made the basis of this lawsuit or the damages resulting therefrom, including statements, photographs, videotapes, audiotapes, surveillance or security tapes or information, business or medical records, incident reports, tenant files, periodic reports, financial statements, bills, telephone call slips or records, estimates, invoices, checks, measurements, correspondence, facsimiles, email, voice mail, text messages, and any electronic image or information related to the referenced incident or damages.

61. Failure to maintain such items will constitute "spoliation" of the evidence.

## X. PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that Defendants be cited to appear and answer herein and that upon final trial and other hearing of this cause, Plaintiff recover damages from Defendants for all damages described herein, including general damages, punitive damages, and special damages in accordance with the evidence, including economic damages, non-economic damages and exemplary damages as the jury deems them deserving; that Plaintiff recover costs of court herein expended; that Plaintiff recover interest to which she is justly entitled under the law, both prejudgment and post judgment; and for such other further relief, both general and special, both in law and in equity, to which Plaintiff may be justly entitled.

Respectfully Submitted,

*/s/ Blerim Elmazi*
Blerim Elmazi, Esq.
State Bar No. 24118375
THE LAW OFFICES OF BLERIM ELMAZI

                                8111 LBJ Freeway, Suite 790
Dallas, TX 75251
Telephone: (817) 438-0123
Blerim@ElmaziLaw.com

*/s/ Shayan Elahi*
Shayan Elahi, Esq.
State Bar No. 24080485
ELAHI LAW & MEDIATION FIRM
8111 LBJ Freeway, Suite 655
Dallas, TX 75251
Telephone: (972) 765-6715
Shayan@ElahiLawFirm.com

**ATTORNEYS FOR PLAINTIFF**